**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

**MOTION INFORMATION STATEMENT**

**Docket Number(s):** 24-345

Caption [use short title]

**Motion for:** Dismiss the Appeal

United States v. Teman

Set forth below precise, complete statement of relief sought:

Dismissal of the appeal with prejudice pursuant to the

fugitive disentitlement doctrine.

**MOVING PARTY:** United States of America     **OPPOSING PARTY:** Ari Teman

☐ Plaintiff          ☐ Defendant

☐ Appellant/Petitioner     ☒ Appellee/Respondent

**MOVING ATTORNEY:** Jay Clayton, U.S. Attorney, Southern District of New York     **OPPOSING ATTORNEY:** Thomas J. Butler, Esq.

[name of attorney, with firm, address, phone number and e-mail]

By: Jacob H. Gutwillig, Assistant U.S. Attorney

26 Federal Plaza, 37th Floor, New York, NY 10278     350 Northern Blvd., Suite 324-1032, Albany, NY 12204

(212) 637-2215; Email: Jacob.Gutwillig@usdoj.gov     (877) 847-1896; Email: appellatelaw@bellsouth.net

Court- Judge/ Agency appealed from: The Honorable Paul A. Engelmayer, United States District Judge, Southern District of New York

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☒ Yes   ☐ No (explain): _____

Opposing counsel's position on motion:
☐ Unopposed  ☒ Opposed  ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes   ☐ No   ☒ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has this request for relief been made below?   ☐ Yes ☐ No
Has this relief been previously sought in this court?   ☐ Yes ☐ No

Requested return date and explanation of emergency: _____

Is the oral argument on motion requested?   ☐ Yes   ☒ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?   ☐ Yes   ☒ No  If yes, enter date: _____

**Signature of Moving Attorney:**

JACOB GUTWILLIG  Digitally signed by JACOB GUTWILLIG Date: 2025.07.28 15:33:09 -04'00'   **Date:** 7/28/25     Service : ☒ Electronic   ☐ Other [Attach proof of service]

**Form T-1080** (rev. 10-23)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

        *Appellee,*

    - v. -

ARI TEMAN, also known as Sealed
Defendant 1,

        *Defendant-Appellant,*

**<u>AFFIRMATION IN
SUPPORT OF
MOTION TO
DISMISS</u>**

No. 24-345

STATE OF NEW YORK          )
COUNTY OF NEW YORK     : ss.:
SOUTHERN DISTRICT OF NEW YORK  )

    JACOB H. GUTWILLIG, pursuant to 28 U.S.C. § 1746, hereby affirms under penalty of perjury:

    1.    I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York. I respectfully submit this affirmation in support of the Government's motion to dismiss defendant-appellant Ari Teman's appeal pursuant to the fugitive disentitlement doctrine. As described below, Teman is currently serving a term of supervised release. He was originally granted permission by the District Court to travel internationally, but he has since willfully refused to comply with the District Court's order to return to the United States at the conclusion of the authorized trip. After the District Court issued a summons to initiate violation of supervised release proceedings, Teman failed to

appear as required, following which the District Court issued a warrant for Teman's arrest for violating the terms of supervised release because he is willfully refusing to return to the United States to subject himself to the District Court's jurisdiction. This appeal should be dismissed with prejudice pursuant to the fugitive disentitlement doctrine.

## STATEMENT OF FACTS

2.      Teman appeals from an order entered on January 25, 2024, in the United States District Court for the Southern District of New York, by the Honorable Paul A. Engelmayer, United States District Judge, denying Teman's motions for a new trial based on newly discovered evidence pursuant to Fed. R. Crim. P. 33.

### A.      Teman's Conviction, Sentence, and Direct Appeal

3.      Superseding Indictment S2 19 Cr. 696 (PAE) (the "Indictment") was filed on January 3, 2020, in six counts. (Dkt. 55).[1] Counts One and Two charged Teman with bank fraud, in violation of 18 U.S.C. § 1344. Counts Three and Four charged Teman with wire fraud, in violation of 18 U.S.C. § 1343. Counts Five and Six charged Teman with aggravated identity theft, in violation of 18 U.S.C. § 1028A. Before trial, the Government elected not to proceed on Counts Five and Six.

---

[1] "Dkt." refers to an entry on the District Court's docket for this case. Unless otherwise indicated, all quotations omit internal quotation marks, citations, and previous alterations.

3.       Trial commenced on January 22, 2020, and ended on January 29, 2020, when the jury returned a verdict of guilty on Counts One through Four. (Dkt. 253). The District Court thereafter denied Teman's various post-trial motions.

4.       On July 28, 2021, Judge Engelmayer sentenced Teman to one year and one day of imprisonment, to be followed by three years' supervised release, and imposed $333,000 in forfeiture, $259,340.32 in restitution, and a $400 mandatory special assessment. (*Id.*). Teman was released on bail pending appeal.

5.       On June 8, 2023, this Court affirmed Teman's conviction and sentence in all respects by summary order. *See United States v. Teman*, No. 21-1920, 2023 WL 3882974 (2d Cir. June 8, 2023).

**B.     Teman's Rule 33 Motions and the Instant Appeal**

6.       In September 2023, shortly before surrendering to serve his sentence of imprisonment (but more than three years after the verdict), Teman filed two motions pursuant to Rule 33, seeking a new trial based on alleged newly discovered evidence. (Dkt. 386, 388).

7.       On January 25, 2024, the District Court denied the Rule 33 Motions, concluding that the purported "new evidence" was neither new nor exculpatory; was consistent with the Government's trial testimony; did not support Teman's trial theory of defense; and would not have impacted the result in any event. (Dkt. 415).

3

8.      The instant appeal is Teman's appeal from the District Court's January 25, 2024 denial of the Rule 33 motions. Merits briefing has been completed, and argument has not yet been scheduled.

## C.      Subsequent Events

9.      Teman was released from prison in May 2024. (Dkt. 450). Approximately four months into his term of supervised release, Teman sought permission to travel internationally, and the District Court modified Teman's terms of supervised release to permit international travel provided each proposed trip was approved in advance by both the United States Probation Office and the District Court. (Dkt. 450-53).[2]

10.     Pursuant to those procedures, Teman requested authorization for a trip to Israel from September 18, 2024, through November 6, 2024, to which the Government did not object and which the District Court granted. (Dkt. 456). Teman thereafter requested authorization to extend his trip, and the District Court granted that request and extended the travel authorization to January 15, 2025. (Dkt. 465).

11.     Teman subsequently requested an indefinite extension of his trip to Israel and the conversion of his supervision to "non-reporting" supervision while

---

[2] Teman's counsel in this appeal does not represent Teman in the District Court proceedings, in which Teman is acting *pro se*.

overseas. (Dkt. 471, 478). The Government opposed Teman's request. (Dkt. 474, 479, 483).

12.    On January 24, 2025, the District Court again granted Teman an extension of his trip to Israel but ordered Teman to return to the United States by February 28, 2025. (Dkt. 484). As of then, Teman had been in Israel for four-and-a-half months. As the District Court explained, Teman's return to the United States was important to enable the Probation Office to meaningfully supervise him, in particular, with respect to the special condition of supervised release requiring Teman to obtain mental health treatment. (*Id.* at 7). The District Court, however, extended the deadline for Teman's return to enable him to plan his return trip in an orderly fashion. (*Id.* at 9-10).

13.    On January 28, 2025, Teman moved for sanctions and for Judge Engelmayer's recusal, recycling claims of judicial misconduct already rejected by this Court in its June 2023 summary order affirming Teman's convictions on direct appeal. *See Teman*, 2023 WL 3882974, at *3; (*see, e.g.*, Dkt. 487). The next day, the District Court denied Teman's motion for sanctions and recusal. (Dkt. 488). In doing so, the District Court stated, "In light of the Circuit's rulings rejecting his claims of prosecutorial and judicial misconduct, Teman's motions as directed to the AUSAs and the Court are not only meritless and duplicative, but frivolous." (*Id.* at 3).

5

14.     Thereafter, Teman continued to make unfounded motions for Judge Engelmayer's recusal based on increasingly irrational claims and *ad hominem* attacks on the District Court, including references to unrelated civil litigation before Judge Engelmayer. (*E.g.*, Dkt. 496, 497). The District Court again denied Teman's motions for recusal, even indicating that, "at [Judge Engelmayer's] request, the Chief Judge of this District reviewed Teman's motion to recuse and concurs that there is no valid basis for recusal." (Dkt. 498 at 2).

15.     On February 24, 2025, Teman again moved for permission to remain in Israel, now arguing that his return to the United States by air would jeopardize his health relating to alleged sinus issues. (Dkt. 502). Teman appended to his motion a brief, conclusory note from Maurice Budow, who based on public records appears to be an internist based in Israel, averring that, although Teman was "well," the change in air pressure caused by air travel could trigger his chronic sinusitis and cause acute sinusitis, and therefore concluding that Teman should not fly for eight weeks. (Dkt. 502-1). The Government opposed Teman's motion. (Dkt. 506).

16.     On February 27, 2025, the District Court expressed its "firm view" that Teman's proffered medical excuse for not complying with the District Court's order to return to the United States by February 28, 2025, was a "pretext." (Dkt. 508, 531). "Every indication," the District Court wrote, "is that Teman is advancing this rationale for not traveling to the United States in a last-ditch effort to avoid return,

6

which he has repeatedly stated he does not wish to do." (Dkt. 508 at 3). The District Court cited numerous factors supporting its conclusion, including that Teman had made no effort at securing travel arrangements, had supplied "a series of frivolous alternative bases why he purportedly could not travel to the United States," and the bare-bones nature of the letter from Dr. Budow evidently obtained by Teman shortly before the deadline on which he was ordered to return to the United States. (*Id.*). The District Court also cited the overall case record, which "reveal[ed] a regrettable but persistent pattern of Teman's making demonstrably false and self-serving statements and accusations." (*Id.* at 3-4). For example, in sworn affidavits submitted by Teman's trial counsel in connection with Teman's pending motion in the District Court pursuant to 28 U.S.C. § 2255, trial counsel "refused as factually untrue numerous representations Teman had made to the Court, and had reported an attempt by Teman . . . to arrange for an anonymous call to be placed from a burner phone to the Federal Bureau of Investigation falsely claiming that a juror at his trial engaged in misconduct." (Dkt. 531 (citing Dkt. 489 ¶ 32)).

17.     Nevertheless, the District Court again extended Teman's return date, to March 21, 2025, and directed (i) Teman to provide any additional medical records supporting his claim that it was unsafe for Teman to travel by air, along with records indicating that he had made travel arrangements to return to the United States; and (ii) the Government to obtain an independent medical assessment of Teman's

proffered medical records, to render a judgment on whether it was medically safe for Teman to travel by air from Israel to the United States. (Dkt. 531).

18.     In response, Teman filed a one-page letter from Dr. Budow and records of his medical care for an unrelated condition in 2024, while he was incarcerated. (Dkt. 513, 514, 518). Teman also again sought the District Court's recusal, which Judge Engelmayer again denied. (Dkt. 513, 514). Teman did not comply with the District Court's order to provide underlying medical records and instead wrote, in part, that he "must remain in Israel until . . . Engelmayer is impeached and this case is dismissed with prejudice." (Dkt. 518 at 2).

19.     Thereafter, at the Government's request so that it could obtain the independent medical evaluation requested by the District Court, the District Court further extended Teman's deadline to return to the United States to April 25, 2025. (Dkt. 523, 524).

20.     On April 15, 2025, the Government submitted an independent medical evaluation from Dr. Richard Nass, a specialist in otolaryngology and sinus issues. (Dkt. 530). Dr. Nass concluded that the limited medical records Teman had provided do "not allow a definitive answer as to whether Mr. Teman can fly safely at this time." (Dkt. 530, Ex. A). The Government, while making clear its continued view that Teman was "using claims about his medical condition as a pretext to stay in Israel and not serve his remaining term of supervised release," stated that it did not

8

wish to jeopardize Teman's health and therefore did not "object to extending the deadline for Teman's return until June 1, 2025, the date by which Teman claims it will be safe for him to fly." (Dkt. 530).

21.     On April 17, 2025, the District Court granted Teman's request to extend his travel authorization to June 1, 2025. (Dkt. 531). In doing so, the Court reiterated its view that "Teman's claim that air travel is medically risky is pretextual" and further noted that "[n]umerous data points support that Teman invoked this in late February as a last-ditch excuse to avoid returning to the United States." (*Id.* at 7). Those included, among other things, "Teman's offer of other bogus rationalizations for not traveling" and his "well-documented pattern in this case . . . of proffering bogus claims and accusations to suit his self-interest." (*Id.* at 7).

22.     During this time period, Teman also filed numerous appeals to this Court from the District Court's orders directing him to return to the United States and denying recusal. He also sought various interim relief from this Court. On June 3, 2025, this Court denied all relief and dismissed as frivolous Teman's various *pro se* appeals from the District Court's orders (not including the instant, counseled appeal from the District Court's Rule 33 decision). *See United States v. Teman*, Nos. 25-332, 25-452, 25-543, 25-1204, Dkt. 38.1 (2d Cir. June 3, 2025).

23.     Teman ultimately did not comply with the District Court's order to return to the United States by June 1, 2025. The United States Probation Office filed

9

a Violation Report with the District Court alleging that Teman's refusal to comply with the Court's order to return constituted a violation of the terms of his supervised release. On June 16, 2025, the District Court issued a summons directing Teman to appear in person for a violation hearing on July 7, 2025. (*See* Dkt. 560).

24.    Thereafter, Teman filed numerous notices on the District Court docket repeating his allegations against Judge Engelmayer and others, (Dkt. 563, 565, 566), and thereafter filed civil actions in the Southern District of New York against Judge Engelmayer, various prosecutors involved in the case, the United States Department of Justice, the Probation Office, and others. *See Teman v. U.S. Probation Servs.*, No. 25 Cv. 4699 (PAE) (S.D.N.Y); *Teman v. Biale, et al.*, No. 25 Civ. 5454 (LTS) (S.D.N.Y).

25.    On July 7, 2025, Teman failed to appear before the District Court despite receiving notice of the conference, and the District Court issued a warrant for Teman's arrest. (Dkt. 567). The District Court thereafter issued an order concluding that Teman qualified as a fugitive under this Court's precedent and indicated that Teman's terms of supervised release nevertheless remained in full force and effect. (*Id.*). The District Court also indicated that orders regarding application of the fugitive disentitlement doctrine to Teman's newly filed civil actions would be forthcoming. (*Id.*).

## ARGUMENT

## The Appeal Should Be Dismissed Under the
## Fugitive Disentitlement Doctrine

26.     "It has been settled for well over a century that an appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal." *Ortega-Rodriguez v. United States*, 507 U.S. 234, 239 (1993). Whether to dismiss a fugitive's appeal—and whether to do so with or without prejudice—is committed to this Court's discretion. *United States v. Zedner*, 555 F.3d 68, 79 (2d Cir. 2008); *accord United States v. Bardakova*, -- F.4th --, No. 24-2038, 2025 WL 2101184, at *7 (2d Cir. July 28, 2025). This Court has previously recognized applicability of the doctrine to this exact posture: where a defendant's conditions of supervised release prohibit him from leaving the district without permission, he receives such permission for a trip of finite length and leaves the district, but then refuses to return by the court-ordered deadline, the fugitive disentitlement doctrine applies. *Zedner*, 555 F.3d at 76.

27.     As the District Court correctly noted (Dkt. 567), Teman is now a fugitive. *See Bardakova*, 2025 WL 2101184, at *4-7 (discussing requirements for fugitivity). Teman has willfully refused to return to the United States despite being repeatedly ordered to do so and receiving six separate extensions of his court-ordered deadline to return. It is clear that Teman has no intention of complying with the District Court's orders; instead, he has continued to file frivolous appeals and civil

11

actions in a misguided attempt to circumvent or override the District Court's authority to supervise him. Indeed, this Court has already concluded that Teman's arguments in opposition to the District Court's orders are frivolous. *See Teman*, No. 25-452 *et al.*, Dkt. 38.1.

28. In determining whether to dismiss a criminal appeal pursuant to the fugitive disentitlement doctrine, this Court looks to four considerations: "1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty for flouting the judicial process; 3) discouraging flights from justice and promoting the efficient operation of the courts; and 4) avoiding prejudice to the other side caused by the defendant's escape." *United States v. Awadalla*, 357 F.3d 243, 245 (2d Cir. 2004); *accord Bardakova*, 2025 WL 2101184, at *7. Any one of these considerations is an "independently sufficient basis on which to apply the fugitive disentitlement doctrine and dismiss the appeal." *Zedner*, 555 F.3d at 77.

29. In this case, all four considerations favor dismissal of the appeal with prejudice. *First*, because Teman remains outside the United States, the Court "cannot assure that any decision rendered against him will be enforced." *Awadalla*, 357 F.3d at 246. The instant appeal challenges the District Court's denial of Teman's motion for a new trial based on allegedly newly discovered evidence. Teman's fugitive status "casts serious doubt on whether" he will return to the United States to serve the remainder of his term of supervised release if this Court renders an unfavorable

12

judgment. *See Zedner*, 555 F.3d at 79 ("If his arguments were rejected, we would have no assurance that [the defendant] would return to the United States to resume compliance with the terms of his supervised release."). Thus, Teman's appeal effectively presents "the posture of heads I win, tails you'll never find me." *Gao v. Gonzales*, 481 F.3d 173, 176 (2d Cir. 2007). There is "no reason to entertain the cause of one who," like Teman, "will respond to a judgment only if it is favorable." *Awadalla*, 357 F.3d at 246.

30.     *Second*, by absconding while on supervised release, Teman has "flouted the judicial process." *Awadalla*, 357 F.3d at 246; *see also Zedner* ("[T]he fugitive from justice has demonstrated such disrespect for the legal processes that he has no right to call upon the court to adjudicate his claim."). The District Court has correctly expressed its "firm view" that Teman's proffered medical excuse for not complying with the District Court's Order to return to the United States on the then-applicable deadline of February 28, 2025, was a "pretext." (*See* Dkt. 508, 531). "Every indication," the District Court wrote, "is that Teman is advancing this rationale for not traveling to the United States in a last-ditch effort to avoid return, which he has repeatedly stated he does not wish to do." (Dkt. 508 at 3). By demonstrating "disrespect for the legal processes" in general and "contempt for the appellate process" in particular, Teman "has no right to call upon the court to adjudicate his claim." *Ortega-Rodriguez*, 507 U.S. at 246, 251. Teman's fugitive

13

status "undercuts the authority and dignity of the judicial process . . . [and] disdains the authority of the court in the very matter in which he seeks relief." *Gao*, 481 F.3d at 177.

31.     *Third*, dismissing Teman's appeal with prejudice would "serve to preserve this Court's resources and deter similarly-situated appellants from fleeing from justice." *Awadalla*, 357 F.3d at 246-47. As this Court has emphasized, "[t]he appropriateness of imposing a sanction against [a fugitive] for disrespecting the dignity of this Court and for the purpose of deterring similar flights by others is obvious." *Zedner*, 555 F.3d at 79. This factor is particularly compelling here, where Teman has not only ignored the District Court's order to return to the United States but has also filed baseless attacks on the District Court's authority in frivolous recusal motions and appeals and new civil actions, underscoring Teman's disrespect for the court system.

32.     *Fourth*, applying the fugitive disentitlement doctrine would prevent prejudice to the Government, which could have difficulty "locating witnesses and presenting evidence" at a new trial, should Teman succeed on this appeal. *Zedner*, 555 F.3d at 76-77.

33.     Finally, this Court should dismiss Teman's appeal with prejudice. As this Court has repeatedly recognized, "the goals of punishment and deterrence generally warrant a dismissal with prejudice, because 'any other course of action

14

would dilute the sanction imposed for flouting the judicial process and reduce the

deterrent effect of that sanction.'" *Id.* at 80 (quoting *Awadalla*, 357 F.3d at 249-50).

34.    As the District Court has correctly found, Teman has willfully refused

to return to the United States and willfully absented himself from the most recent

proceedings before the District Court. He has regularly filed pretextual and baseless

claims in an attempt to prevent effective execution of his sentence of supervised

release. Nothing in Teman's actions suggests any intention to comply with any court

order, whether of the District Court or this Court, that is unfavorable to him. His

circumstances fall squarely within this Court's precedents on fugitive disentitlement,

and the appeal should be dismissed with prejudice.

## CONCLUSION

35.    For the foregoing reasons, Teman's appeal should be dismissed with prejudice.

Dated:    New York, New York
            July 28, 2025

                        Respectfully submitted,

                        JAY CLAYTON
                        United States Attorney for the
                        Southern District of New York

        By:    /s/ Jacob Gutwillig
                        Jacob Gutwillig
                        Assistant United States Attorney
                        Telephone: (212) 637-2215

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this motion complies with the type-volume limitation of Rule 27(d)(2). As measured by the word processing system used to prepare this response to a motion, there are 3,352 words in this response.

JAY CLAYTON
United States Attorney for the
Southern District of New York

By:   /s/ Jacob Gutwillig
Jacob Gutwillig
Assistant United States Attorney
Telephone:  (212) 637-2215