# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

## MOTION INFORMATION STATEMENT

**Docket Number(s):** Case No.: 24-345

**Caption [use short title]**

**Motion for:** MOTION FOR RECONSIDERATION
MOTION FOR CHANGE OF VENUE
MOTION FOR RECUSAL OF JUDGE PAUL A. ENGELMAYER, AND MOTION FOR CHANGE OF VENUE

**Set forth below precise, complete statement of relief sought:**

MOTION FOR RECONSIDERATION
MOTION FOR CHANGE OF VENUE

# TEMAN V USA

**MOVING PARTY:** _____  **OPPOSING PARTY:** SDNY

☐ Plaintiff   ☐ Defendant
✔ Appellant/Petitioner   ☐ Appellee/Respondent

**MOVING ATTORNEY:** _____  **OPPOSING ATTORNEY:** Guttwillig, Jacob

[name of attorney, with firm, address, phone number and e-mail]

**Court- Judge/ Agency appealed from:** _____

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
✔ Yes   ☐ No (explain): _____

Opposing counsel's position on motion:
☐ Unopposed  ☐ Opposed  ✔ Don't Know

Does opposing counsel intend to file a response:
☐ Yes  ☐ No  ✔ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**
Has this request for relief been made below?  ☐ Yes  ☐ No
Has this relief been previously sought in this court?  ☐ Yes  ☐ No
Requested return date and explanation of emergency: _____

Is oral argument on motion requested?  ☐ Yes  ✔ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?  ✔ Yes  ☐ No  If yes, enter date: 10/2025

**Signature of Moving Attorney:**

s/Ari Teman   **Date:** 10/7/2025 8:06pm TLV   **Service by:** ☐ CM/ECF  ✔ Other [Attach proof of service]

Form T-1080 (rev.12-13)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

United States v. Ari Teman,    No. 24-345

---

MOTION FOR RECONSIDERATION AND FOR TRANSFER OF VENUE

Pursuant to FRAP 27, Local Rule 27.1, 28 U.S.C. §§ 1404, 455(a), 2106, and the Court's inherent authority

---

I. INTRODUCTION

Appellant **Ari Teman**, proceeding pro se, moves this Court to reconsider and vacate its October 6, 2025 Order (Dkt. 77.1) dismissing his appeal with prejudice under the fugitive disentitlement doctrine based on absolutely zero medical evidence contradicting his board-certified ENT's no-fly order and evidence that no ships were available to take him from Israel to the USA during the war.

Arguing that Appellant's medical conditions are "pretextual" is even more absurd given **Appellant has a documented history of debilitating masses and clotting that have required multiple ENT surgeries to remove similar blockages, masses, and inflammation, and the District Court and Government have both previously acknowledged this** (Dkt 280 and 290) and thus is it deeply unjust, corrupt, and absurd to argue against objective medical evidence suggesting Appellant continues to suffer these same recurring issues.

The October 6 dismissal rests on **clear factual error, misapplication of law, and disregard for sworn evidence and objective medical testing**. It also ignores the systemic conflicts of interest that pervade this Circuit, which has a direct institutional stake in shielding Judge Engelmayer and other SDNY actors from exposure in *Teman v. Biale et al.*, 1:25-cv-05454 (S.D.N.Y.), a civil action documenting intentionally concealed conflicts of interest in dozens of cases. It is notable that SDNY has chosen an antitrust attorney to defend itself in that matter given the conspiracy to deprive defendants of conflict-free counsel in "many SDNY cases".

## II. GROUNDS FOR RECONSIDERATION

Reconsideration is warranted under Second Circuit precedent because the October 6 dismissal:

1. Mischaracterized Appellant's **documented medical incapacity** to fly as "pretextual" even *despite having no evidence to counter the defendant's evidence*;

2. Ignored uncontroverted evidence that **no lawful maritime transportation was available**;

3. Misstated the prejudice flowing from **witness misconduct**, which harmed Appellant and not the Government;

4. Overlooked the **pending § 2241 petition and appeal** in the Southern District of Florida, rendering any alleged violation non-final; and

5. Failed to address the **tolling and collateral consequences** of premature finality.

See *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009); *Shrader v. CSX Transp.*, Inc., 70 F.3d 255, 257 (2d Cir. 1995).

---

## III. FACTUAL MISCHARACTERIZATIONS IN THE ORDER

**A. Medical Incapacity to Fly Was Not Pretextual**

The Court's conclusion that Appellant's medical condition was "pretextual" is both unsupported by evidence and contradicted by science.

- **ETF Test at Sheba**: At Sheba Medical Center, Appellant underwent a **Eustachian Tube Function (ETF) test**. This test involves inserting a probe into the ear canal to measure whether pressure equalizes when the patient swallows water. Appellant's ears failed the test. The ETF test is mechanical and objective; it cannot be faked as it involves zero input by the patient. It proves that Appellant's ears cannot equalize pressure and that flying would

be agonizing and dangerous until treated.

- **Medical Consensus**: *Every* board-certified ENT and specialist to examine Appellant confirmed that air travel would be unsafe. The Government's own expert admitted he could not dispute this.

- **Ongoing Harm**: Appellant continues to experience pain and pressure, worsened by stays in positive-pressure missile shelters during Iranian rocket barrages (While sheltering for 10 minutes is common, the Iranian attacks required many individuals to shelter for more than an hour at a time, requiring the use of positive-pressure air filtration systems that put additional pressure and pain on Appellant's ears). Steroid treatments have proven ineffective.

- **Pending MRI**: Appellant is awaiting a medically necessary **MRI and inspection of the Eustachian tubes**, delayed because Israeli hospitals and specialists are overwhelmed with wartime injuries and required military reserve duty. This MRI is essential to determine whether it is **cancerous tumors, masses, clotting, or structural obstructions** that are causing the dysfunction.

- **Appellant has a documented history of debilitating masses and clotting that have required surgery**, as documented at (Dkt 280 and 290) and thus is it deeply unjust, corrupt, and absurd to argue against objective medical evidence suggesting these issues are recurring and need treatment.

The ETF test proves that Appellant's inability to fly is **not pretextual and cannot be pretextual**.

If the MRI reveals tumors or other obstructions, then the Court will have prematurely dismissed a legitimate appeal filed by paid counsel because the defendant was, in fact, suffering from cancer or another physical medical condition. That outcome would be **manifestly unjust** and contrary to due process.

---

**B. No Lawful Transportation Option Existed**

Appellant's inability to return was dictated by objective circumstances:

- No passenger ships operated from Israel to the USA due to war

- No cargo vessels offered passenger berths.

- Carriers refused because of **Houthi missile and drone attacks** in the Red Sea.

Appellant diligently contacted cruise companies, cargo operators, and agents. None were available. Appellant provided evidence of this. The Court's contrary conclusion is unsupported.

---

**C. Witness Misconduct Prejudiced Appellant, Not the Government**

The Court's Order also cited "potential prejudice to the government" in locating witnesses if Appellant were successful on appeal. That finding is **factually wrong and legally irrelevant**:

1. **Appellant is the only person abroad.** He did not testify at trial due to his documented medical condition, as argued in his pending § 2255 appeal. His location has no effect on the Government's ability to locate its own witnesses.

2. **Two key witnesses subpoenaed by Appellant for the first trial—Michael Haas and Shelly Jenkins Pecot—actively avoided the United States and violated their subpoenas.** Ms. Pecot later admitted she was aware of the subpoena and that Appellant had warned her and her fellow-board members of its terms and that she had reviewed and accepted them.

    Pecot wrote to Judge Engelmayer in a sworn and witnessed statement that Appellant does not belong in prison and that the witnesses hid emails showing they were well-aware of the terms allowing the drafts by Appellant. This is one major fact this Court is choosing to ignore to protect a corrupt judge and avoid a trial exposing the many times his mentee Biale cheated defendants.

3. **The only party harmed by witnesses fleeing is Appellant.** It is Appellant, not the Government, who lost testimony and evidence due to witnesses evading the court's process.

If the Court considered "witness difficulty" to be material, it should issue a **written ruling** on Appellant's appeal of these issues, and order a **new trial** that requires that Haas and Pecot remain available in New York to testify, and that all witnesses use a third-party discovery vendor to pull emails and texts because all witness hid many emails and texts -- or the government hid it for them. **It is not Appellant who wishes to hide the evidence and witnesses -- it is the Government. (What you accuse me of is what <u>you</u> are guilty of!)**

Dismissing the appeal with prejudice while ignoring the Government's and witnesses' violations—while simultaneously imputing prejudice to the Government—is arbitrary and contrary to precedent.

The **only prejudice** caused by witnesses being out of the country was to Appellant, not the Government.

---

## IV. LEGAL MISAPPLICATION OF THE FUGITIVE DISENTITLEMENT DOCTRINE

The October 6, 2025 dismissal order fundamentally misapplies the fugitive disentitlement doctrine. That doctrine is not a mandatory bar but a discretionary remedy applied only in cases of **deliberate flight or defiance of judicial authority**. The record here demonstrates the opposite: Appellant did not abscond, acted with court permission, and was prevented from returning by external barriers and medical incapacity.

1. **Court-Approved Travel**: Appellant did not leave the United States surreptitiously or in defiance of any court order. His travel to Israel was expressly **authorized by the district court and probation authorities** (Dkt. 456). This alone distinguishes the case from every precedent cited by the Government. Unlike in *Zedner v. United States*, 555 F.3d 68 (2d Cir. 2008), where the defendant absconded without permission, Appellant's departure was lawful, transparent, and sanctioned by the court.

2. **Extensions Granted Through June 1, 2025**: The district court and probation office repeatedly extended Appellant's stay abroad (Dkts. 465, 484, 531), acknowledging both the wartime circumstances and Appellant's medical condition. These extensions reflect judicial recognition that Appellant's presence in Israel was not wrongful but compelled by necessity.

When the court itself grants extensions of travel, it cannot then characterize continued presence abroad as "flight."

3. **Probation Officer Recommendation**: Far from treating Appellant as a fugitive, Probation Officer Wong recommended in writing that Appellant remain abroad due to health and safety concerns. This official recommendation—ignored by the dismissal order—confirms that Appellant's conduct was viewed as compliant, not defiant, by those charged with supervising him.

4. **Documented Attempts to Return**: Appellant made **repeated, documented efforts** to secure lawful travel to the United States. He contacted passenger cruise lines, cargo ship operators, and maritime brokers, only to be informed that no vessels carrying passengers were operating from Israel due to the war and the escalating Houthi missile and drone attacks on shipping. In addition, Appellant's objectively documented medical condition (Eustachian Tube Dysfunction confirmed by ETF testing at Sheba Medical Center) made air travel unsafe. These circumstances establish not evasion but **good faith attempts thwarted by circumstances beyond his control**.

5. **Controlling Precedent – United States v. Bescond**: This case falls squarely under *United States v. Bescond*, 24 F.4th 759 (2d Cir. 2022), where the Second Circuit held that the fugitive disentitlement doctrine cannot be applied to a defendant who did not intentionally flee the United States and whose presence abroad was not an act of defiance. Like Ms. Bescond, Appellant's presence outside the country was neither secretive nor willful flight, but rather authorized and justified by external barriers and health conditions. Indeed, Appellant's case is even stronger: whereas Bescond remained abroad without ever appearing, Appellant had already served his sentence, complied with his conditions, and only remained abroad because the court and probation office allowed and even recommended it.

In short, **the factual record shows compliance, transparency, and necessity—not flight or defiance**. The Court's application of fugitive disentitlement here ignores its discretionary nature, disregards controlling Second Circuit authority, and substitutes speculation for uncontroverted evidence.

## V. FAILURE TO ACCOUNT FOR PENDING § 2241 PETITION

Appellant's **pending § 2241 petition and its appeal in the Southern District of Florida** directly challenges the validity of the return order. The **alleged "violation" of supervised release is not final** and should not serve as the basis for disentitlement. *Sun v. Mukasey*, 555 F.3d 802 (9th Cir. 2009).

## VI. FINALITY AND TOLLING

Premature dismissal would unfairly attach finality:

- Collaterally prejudicing Appellant in § 2255 and § 2241 actions.

- Permitting the Government to argue appellate review has already been denied.

- Staying related civil litigation (*Teman v. Biale et al.*), etc.

Reconsideration is necessary to prevent such collateral harm.

## VII. SYSTEMIC CONFLICTS IN THE SECOND CIRCUIT

This Circuit is institutionally conflicted:

- **Biale/Graham Conflict**:

  Noam Biale, Appellant's defense counsel, was secretly married to AUSA Margaret Graham. This conflict was concealed from Appellant and dozens of other defendants. FOIA evidence shows SDNY officials deliberately buried it.

- **Engelmayer's Role**:

   Judge Engelmayer presided over multiple SDNY cases and knew of "many

SDNY cases" while aware of the Biale-Graham conflict and is now, as a result, a **named defendant** in *Teman v. Biale et al.* He has a direct personal motive to brand Appellant a "fugitive," since that keeps the civil case against him stayed.

- **Circuit-Wide Bias**:

Every judge in this Circuit is institutionally conflicted, because acknowledging the misconduct would require reopening dozens of SDNY cases.

- **Appearance of Impropriety**:

Appellant has repeatedly raised concerns that the **original appellate ruling in this case**—the one denying relief from Judge Engelmayer's district court rulings—was in fact **authored by Judge Engelmayer himself** or substantially influenced by him.

Independent linguistic analysis using both **Grok (xAI)** and **ChatGPT** found that the writing style, phrase structure, case citation format, and rhetorical pacing of the original Second Circuit ruling were **virtually indistinguishable** from Judge Engelmayer's known rulings. The ruling notably mirrored Judge Engelmayer's specific formatting idiosyncrasies, use of parentheticals, and narrative tone, including certain exact phrasings used in previous district court decisions involving Mr. Teman.

If true, this would represent a **profound violation of appellate ethics**, as no district judge should ever ghostwrite—or appear to ghostwrite—an appellate ruling reviewing their own decision. Even the **appearance** of such conduct undermines **public trust, due process, and the legitimacy of the judiciary**.

Given that the current panel has refused to consider or even acknowledge these concerns while simultaneously upholding those rulings without meaningful written appellate review, Appellant respectfully requests **reassignment of this appeal to a new, randomly selected panel**. This request is consistent with this Court's inherent supervisory powers to ensure impartial adjudication.

Due process requires transfer under *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009).

---

## VIII. SECOND CIRCUIT'S CONDUCT PRECLUDES RETURN

The **refusal to credit unrefuted evidence and board-certified expert medical norders** *and instead to make rulings based on personal whims* that would **put Appellant at risk of permanent deafness,** or worse, **demonstrates Appellant cannot expect fairness in this Circuit**.

Even if medically cleared to travel, the appearance of predetermined outcomes undermines the legitimacy of this forum, and shows that the Appellant is not safe in the United States while this case is pending.

Appellant respectfully notifies this Court that if reconsideration and transfer are denied, he will petition the **Supreme Court of the United States for certiorari before judgment under Rule 11**, as only the Supreme Court can provide impartial review (and even that has now been publicly questioned by even the President of the United States).

Unlike Judge Engelmayer, the Government, and this Court, the Appellant has eagerly motioned for the <u>facts and evidence</u> to be considered, while you guys are brazenly cheating and calling me a "fugitive" -<u>-</u>

 <u>**I'm the one showing up and wanting a hearing on the facts and evidence. You are the ones running away from having a legitimate discussion of the facts.**</u> You are the ones who flee justice.

---

## IX. RELIEF REQUESTED

Appellant respectfully requests that this Court:

1. **VACATE** its October 6, 2025 dismissal order (Dkt. 77.1);

2. **REINSTATE** the appeal and adjudicate the merits, including Brady violations, witness misconduct, and ineffective assistance claims;

3. **TRANSFER** the appeal to the Fifth Circuit for hearing in the **Eastern District of Texas**, where Appellant has longstanding ties and access to independent counsel;

4. Alternatively, **REASSIGN** the matter to a new, randomly selected Second Circuit panel free from conflicts and free from judges nominated by President Biden who was since revealed to be "senile from day one"[1];

5. **At the very least, withhold judgment and explicitly maintain that Appellant is not a fugitive until the pending MRI and inspection of the Eustachian tubes are completed**, so the Court does not prematurely brand as "pretextual" an objectively-proven condition that may in fact be caused by tumors or other serious medical conditions.

---

**Dated: October 7, 2025**

Respectfully submitted,

**/s/ Ari Teman**
Ari Teman, Pro Se
Tel Aviv, Israel
ari@teman.com

---

**CERTIFICATE OF SERVICE**

I certify that on October 7, 2025, I served this motion via email on:

- Jacob.Fiddelman@usdoj.gov

- Jacob.Gutwillig@usdoj.gov

---

[1] "Joe Biden senile from day 1 as mental decline hidden from voters for 4 years by 'cover-up'"
https://www.express.co.uk/news/us/1991083/Joe-Biden-senile-mental-decline-hidden-voters-cover-up

"How the White House Functioned With a Diminished Biden in Charge"
https://www.wsj.com/politics/biden-white-house-age-function-diminished-3906a839

- and via pro se ECF clerk email.

**/s/ Ari Teman**
 Ari Teman, Pro Se

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

**United States v. Ari Teman,**  No. 24-345

**CERTIFICATE OF SERVICE**

I certify that on October 7, 2025 (after nightfall, Sukkot Day 1 in Tel Aviv, Israel), I served this motion via email on:

- Jacob.Fiddelman@usdoj.gov

- Jacob.Gutwillig@usdoj.gov

- and via pro se ECF clerk email.


**/s/ Ari Teman**
 Ari Teman, Pro Se
Tel Aviv, Israel
Ari@teman.com